UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PETER J.L. PICOLET,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | NO. C11-5429-MJP-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Peter J.L. Picolet appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

I.     FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a 31-year-old man with a ninth grade education that included some special education classes. Administrative Record ("AR") at 26, 27, 29, 212, 293. Plaintiff has never been gainfully employed. AR at 12, 25, 29, 126, 134.

REPORT AND RECOMMENDATION - 1

On August 27, 2007, plaintiff filed a claim for SSI payments. AR at 10, 112. Plaintiff asserts that he is disabled due to Attention Deficit Disorder ("ADD") and depression. AR at 128.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 10, 56-59, 64-70. Plaintiff requested a hearing which took place on November 6, 2009. AR at 10. On December 14, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job "existing in significant numbers in the national economy." AR at 16-17. On April 7, 2011, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security in this case. AR at 1-4. On June 6, 2011, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

REPORT AND RECOMMENDATION - 2

whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV. EVALUATING DISABILITY

As the claimant, Mr. Picolet bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On December 14, 2009, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since August 27, 2007, the application date.

2. The claimant has the following severe impairments: cognitive disorder, not otherwise specified, antisocial personality disorder, and anxiety disorder, not otherwise specified.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to remember simple instructions and is able to sustain concentration on simple, repetitive tasks. He would work at an episodically slow work pace, but he would be productive at simple, routine work. The claimant would be able to accept instructions and cooperate with a few co-workers away from the general public

5. The claimant has no past relevant work.

6. The claimant was born on XXXX, 1978 and was 29 years old, which is defined as a younger individual age 18-44, on the date the application was filed.[2]

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 27, 2007, the date the application was filed.

AR at 12-17, 26.

## VI. ISSUE ON APPEAL

1. Did the ALJ err in evaluating the opinions of Charaine Herald, Ph.D?

Dkt. 11 at 1; Dkt. 12 at 2.

## VII. DISCUSSION

### A. The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

#### 1. *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they,

rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

2.  *Charaine E. Herald, Ph.D.*

Dr. Charaine E. Herald, Ph.D., performed psychological examinations of the plaintiff on six separate occasions for the DSHS. AR at 209-30, 268-301. She diagnosed plaintiff with Attention Deficit Hyperactivity Disorder ("ADHD"), heroin dependence (in varying stages of remission), anxiety disorder NOS, and personality disorder with antisocial and paranoid traits. AR at 209-30, 268-301. In her most recent evaluation dated August 19, 2009, Dr. Herald

REPORT AND RECOMMENDATION - 7

assessed plaintiff as having marked functional mental symptoms of attention deficit and social anxiety in the context of a normal workday. AR at 294. Specifically, Dr. Herald noted that although plaintiff has a daily hygiene routine[3] and is "able to perform serial calculations quickly with minimal errors," plaintiff also showed marked impairments in comprehending complex instructions, learning new tasks, performing routine tasks, staying focused, relating to coworkers, eye contact, and behaving adequately in a workplace setting. AR at 296-97. For example, Dr. Herald stated that plaintiff "reports problems with distractibility and recent memory," and that plaintiff is "reportedly able to perform manual tasks, but loses track of task or leaves in frustration after more than 2 hours." AR at 296. Dr. Herald also found that plaintiff has a severe level of anxiety, and assigned him a Becks Assessment Inventory ("BAI") score of 32. AR at 298, 301.

The ALJ discussed Dr. Herald's opinions during the administrative hearing, as well as in his written decision, and ultimately afforded them "limited weight." AR at 16, 40-41. Specifically, the ALJ listed the following reasons for assigning limited weight to Dr. Herald's assessments: (1) plaintiff's daily activities were inconsistent with Dr. Herald's opinion that plaintiff has marked functional limitations; (2) Dr. Herald's opinions are almost exclusively based on plaintiff's self-reports; (3) Dr. Herald does not "conclusively link" plaintiff's substance abuse to his mental health issues; and (4) Dr. Herald's opinions are inconsistent with

---

[3] On numerous occasions, Dr. Herald assessed plaintiff as having no limitations regarding his personal hygiene and appearance. AR at 211, 217, 224, 296. However, in 2008, Dr. Herald observed that plaintiff had "dirty fingernails," and plaintiff was thus evaluated as having a mild limitation in his ability to care for himself. AR at 283, 287. Late in 2008 and in 2009, however, plaintiff was again evaluated as having average or normal hygiene. AR at 289, 299. Though plaintiff may have occasional issues with cleanliness such as showering infrequently, his overall record reflects that plaintiff generally appears "adequately dressed and groomed." AR at 257.

REPORT AND RECOMMENDATION - 8

the opinions of other providers and with the objective medical evidence in the record.  AR at 16.

Plaintiff asserts that the ALJ erred by affording less weight to Dr. Herald's opinions than plaintiff's other providers on the grounds that he failed to state specific and legitimate reasons supported by substantial evidence.  Dkt. 11.  Because plaintiff's ability to perform daily tasks allegedly did not "correspond to a work-like setting," plaintiff disputes the ALJ's reasons for rejecting Dr. Herald's assessment on this basis.  *Id*. at 4.  In addition, plaintiff contends that Dr. Herald's methods included standardized testing, and therefore she did not solely rely on plaintiff's self-reports.  *Id*.  Finally, plaintiff disputes the ALJ's conclusion that his past incarcerations and drug abuse history "were the primary blocks from his ability to work and also drove his mental health issues." *Id*. at 4-5.

The Commissioner argues that the ALJ did not err, because plaintiff's daily activities show that his abilities are greater than Dr. Herald's assessed limitations.  Dkt. 12 at 5.  In addition, the Commissioner asserts that Dr. Herald's assessments were afforded less weight because she almost exclusively relied "on the claimant's subjective self-reporting." *Id*. at 5-6.  He also states that plaintiff's substance abuse and incarceration were not the only blocks from his ability to work, but two of many "significant life stressors" that plaintiff has encountered.  *Id*. at 7.

The Court finds that the ALJ's reasons for affording Dr. Herald's opinions less weight than the other medical opinions in the record were specific and legitimate, and are supported by substantial evidence in the record.  Plaintiff's daily activities demonstrate that he does not have the marked functional limitations described by Dr. Herald.  Specifically, plaintiff's ability to drive, set and keep appointments, and apply a daily methadone regimen reflects his ability to perform routine tasks as well as learn new ones.  AR at 16.  As the ALJ noted during the

REPORT AND RECOMMENDATION - 9

hearing, a "typical day" for the plaintiff includes getting up at 8 a.m., getting breakfast at McDonald's, driving to the methadone clinic, traveling to his grandmother's house to do odd jobs such as lawn mowing from 11 a.m. – 7 p.m., showering, and then ending the day by eating dinner and watching TV with his girlfriend and her two children. AR at 40-42, 295.

Based on these substantial daily activities, the ALJ asked plaintiff during the hearing what would prevent him from working as a caregiver or janitor. AR at 42-43. Plaintiff initially responded, "My record." AR at 42. When asked, by the ALJ, whether anything besides his criminal record would prevent plaintiff from obtaining such employment, plaintiff stated, "My memory." AR at 42-43. However, Dr. Herald's notes demonstrate that in addition to having a substantial daily routine, plaintiff could recall the Governor of the State of Washington, the President of the United States, and "perform digit spans forwards and backwards." AR at 257. On July 24, 2008, Dr. Leslie Postovoit, Ph.D., concluded that "claimant [was] able to manage simple tasks without excessive interaction with the public." AR at 261. Dr. Herald herself assessed plaintiff as "able to perform serial calculations quickly and with minimal errors" on August 19, 2009. AR at 296. The ALJ could reasonably conclude that Dr. Herald's opinions regarding plaintiff's marked limitations were "inconsistent with . . . claimant's level of activities." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Thus, the ALJ did not err in affording less weight to Dr. Herald's opinions based on plaintiff's daily activities.

In addition, the Court agrees with the ALJ's observation that Dr. Herald's evaluations were largely based on the plaintiff's own reports. AR at 209-30, 268-301. In evaluating the plaintiff's functional limitations, Dr. Herald often lists plaintiff's comments without analysis by directly quoting the patient or writing that the patient "states" or "reports" in the space provided for her own observations. AR at 217, 296. For example, Dr. Herald stated that

REPORT AND RECOMMENDATION - 10

plaintiff "reports problems with distractibility and recent memory." AR at 296. Plaintiff also stated "that he is unable to do anything for longer than 2 or 3 hours without becoming irritable and angry, and having to leave." *Id*. Similarly, Dr. Herald noted that plaintiff "reports poor follow through on tasks . . . [He also] states that forcing him to do anything would set him up for failure, as he would then certainly not do what was being asked." AR at 217. In comparison, Dr. Herald's own observations of plaintiff's behavior or limitations are scant.

Contrary to plaintiff's argument that Dr. Herald actually relied on objective test results, these results were also based on plaintiff's self-reporting. The BAI is an assessment in which the plaintiff himself checks boxes to indicate how and what he is feeling at the time. AR at 214, 301. Similarly, Dr. Herald's conclusions on the Mental Status Examination ("MSE"), were not apparently based on the objective tests performed. AR at 300. Specifically, the tests that Dr. Herald performed indicated that plaintiff was either not impaired or only mildly impaired. Her given reasons for assigning a GAF score of only 40 do not relate to her objective observations, but to what plaintiff reported.[4] AR at 299-300. For example, Dr. Herald cites plaintiff's reportedly "poor follow through on chores" as a justification for the GAF score she

---

[4] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* A GAF score of 31-40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." A GAF score of 21-30 indicates "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communications or judgment" or "inability to function in all areas." *Id.*

REPORT AND RECOMMENDATION - 11

assigns. AR at 217, 300. Thus, the ALJ's assertion that "Dr. Herald's findings were almost exclusively based on the claimant's subjective self-reporting" is accurate. AR at 16.

Similarly, the ALJ did not err by stating that Dr. Herald failed to "conclusively link" plaintiff's substance abuse, such as plaintiff's past heroin use, with his diagnosed mental disorders. Specifically, Dr. Herald marked "yes" to indicate plaintiff's current or recent alcohol or substance use. AR at 295. Although the evaluation mandates a description of the symptoms and effects of plaintiff's substance use, Dr. Herald gave none. AR at 295. The ALJ further observed that "the evidence indicates . . . claimant's substance abuse and subsequent incarcerations, now in the past, were the primary blocks from his ability to work and also drove his mental health issues." AR at 16. Plaintiff has failed to identify any evidence to contradict this finding. Moreover, the ALJ properly acknowledged that plaintiff's mental health issues appear to have been caused by numerous life stressors. Specifically, the ALJ states that in addition to plaintiff's past incarcerations and drug abuse history, his "very limited education, lack of a formal work history, and lack of social supports" are all "significant life stressors" that have also affected his mental health. AR at 16.

Finally, the ALJ did not err in finding that Dr. Herald's evaluations "were not concurrent with the objective medical evidence, nor with those of […] his providers." AR at 16. Specifically, Dr. Herald reported that plaintiff is "markedly impaired" from performing simple cognitive and social tasks. AR at 211, 296. However, plaintiff displayed only moderate functional limitations according to the DDS psychiatric review and mental residual functional capacity assessment completed by Dr. Michael Brown, Ph.D., on October 8, 2007. AR at 242, 246. As previously stated, Dr. Postovoit affirmed Dr. Brown's assessment by determining that plaintiff was "able to manage simple tasks without excessive interaction with the public." AR at 261. On July 9, 2008, Dr. Shannon Jones, Ph.D., assigned plaintiff a GAF

score of 60.  AR at 15.  By contrast, Dr. Herald found plaintiff markedly impaired on numerous occasions and gave plaintiff a GAF score of 40.  AR at 296, 300.  With this evidence as a whole, the ALJ could reasonably find that Dr. Herald's opinions were not concurrent with the other medical opinion evidence in the record.  AR at 16.

The role of this Court is limited. As noted above, it is the duty of the ALJ to resolve conflicts in medical testimony and other ambiguities that might exist. *Andrews*, 53 F.3d at 1039.  Accordingly, the Court finds that the reasons given by the ALJ to discount Dr. Herald's opinions were specific and legitimate and supported by substantial evidence in the record. The ALJ did not err in his assessment of Dr. Herald's opinions.

## CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED.  A proposed order accompanies this Report and Recommendation.

DATED this 30th day of January, 2012.

*[signature: James P. Donohue]*

JAMES P. DONOHUE
United States Magistrate Judge